# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

In Re

KENT J. JOHNSON,

**Debtor.**

**Bankruptcy Case No.
04-42117-JDP**

_____

KENT J. JOHNSON,

**Plaintiff,**

vs.

DANIEL L. STAPELMAN
as Minidoka County
Commissioner, LYNN A.
HUNSAKER as Minidoka
County Commissioner,
MINIDOKA COUNTY as a
subdivision of the State of
Idaho; CASSIA REGIONAL
MEDICAL CENTER,

**Defendants.**

**Adv. Proceeding No. 07-8071**

_____

## MEMORANDUM OF DECISION

MEMORANDUM OF DECISION - 1

_____

**Appearances:**

>Patrick J. Geile, FOLEY, FREEMAN, PLLC,  Meridian, Idaho, Attorney for Plaintiff.

>Alan Goodman, Minidoka County Prosecuting Attorney, Rupert, Idaho, Attorney for Defendant Minidoka County.

>William R. Dalling, DALLING & DALLING, Idaho Falls, Idaho, Attorney for Defendant Cassia Regional Medical Center.

## Introduction

In this adversary proceeding, Plaintiff Kent Johnson alleges that the Defendants, the Minidoka County Commissioners ("County") and Cassia Regional Medical Center ("CRMC"), violated the terms of Plaintiff's bankruptcy discharge, and that County's medical indigency lien should be avoided.  Docket No. 1.  County and CRMC dispute the allegations that they violated the discharge injunction and assert County's lien is valid. Docket Nos. 7, 8.

On December 18, 2007, Plaintiff moved for summary judgment. Docket No. 20.  The Court conducted a hearing on the motion on January

MEMORANDUM OF DECISION - 2

30, 2008 at which counsel for the parties appeared and argued.  At the

conclusion of the hearing, the Court took the issues under advisement.

Having now carefully considered the record, the parties'

submissions and arguments, and the applicable law, this Memorandum

disposes of the issues.[1]

### Facts

These issues are presented in the context of a summary judgment

motion because the material facts in this action are not in dispute.

Plaintiff was treated at CRMC on June 27, 2004 for abdominal pain.

On June 28, 2004, Plaintiff sought assistance from County in paying his

resulting medical expenses, and completed a "Uniform County Medical

Assistance Application."  Plaintiff was interviewed by a County

investigator on July 7, 2004 in connection with that application.  On July

12, 2004, County caused a Notice of Lien to be filed in the Minidoka

---

[1] To the extent required by rule, this Memorandum constitutes the Court's
findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052.

MEMORANDUM OF DECISION - 3

County Recorder's Office; on July 13, 2004, a similar Notice of Lien was filed with the Idaho Secretary of State.

On August 23, 2004, County denied Plaintiff's application for medical assistance on the basis that Plaintiff was not medically indigent as that term is defined by Idaho Code § 31-3502(1).  On September 13, 2004, CRMC timely requested a hearing before the county commissioners regarding the denial of Plaintiff's application.  That hearing was scheduled for December 10, 2004.

In the meantime, on October 8, 2004, Plaintiff and his wife filed a voluntary petition for relief under chapter 7[2] of the Bankruptcy Code. Plaintiff's medical bills to CRMC were listed in Plaintiff's schedule of debts, and County and CRMC were mailed a notice of the bankruptcy filing.  In light of the bankruptcy case, the administrative hearing previously scheduled for December 10, 2004 was cancelled.  On February 2, 2005, the Court entered a discharge in favor of Plaintiff and his wife.  As

---

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION - 4

discussed below, this discharge effectively prohibited any creditor from

pursuing any action against Plaintiff to collect any discharged debts.

Following the entry of discharge, the administrative proceedings

regarding Plaintiff's application for medical assistance were resumed.  On

March 10, 2005, CRMC caused to be issued and served Plaintiff with a

subpoena to appear at the rescheduled hearing to be held on April 15,

2005.  As commanded by the subpoena, Plaintiff appeared and testified at

that hearing.  Three days later, on April 18, 2005, County approved

Plaintiff's application for medical assistance and paid CRMC the

applicable Medicaid rate for the services it had provided to Plaintiff.  In

connection with that determination, County waived Plaintiff's obligation

to immediately reimburse County for these sums, but asserted that its lien

on Plaintiff's real property securing this obligation would continue in

effect.

On July 10, 2007, Plaintiff commenced this adversary proceeding to

challenge the validity of County's lien and to recover sanctions against

County and CRMC for attempting to collect a discharged debt.

MEMORANDUM OF DECISION - 5

**Discussion**

I.

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81, (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).  A court "may grant summary judgment for the non-moving party if it is apparent from the record and at the hearing that there is no genuine issue of material fact essential to the movant's case."  *Superior Eng'g and Elecs. Co., Inc. v. Sanders*, 833 F.2d 823, 825 (9th Cir. 1987).

In order to safeguard the public health, safety and welfare, Idaho law requires a county to pay a provider for necessary medical expenses incurred by indigent patients residing in that county.  Idaho Code § 31-3501 *et seq.*  To receive assistance, a written application must be submitted to the county clerk; the application may be filed by either the indigent

MEMORANDUM OF DECISION - 6

patient, or by a third party on behalf of the patient.  Idaho Code § 31-

3504(1), (2).  When an application is filed, an automatic lien arises which

attaches to all real and personal property owned by the indigent patient.

Idaho Code § 31-3504(4).  To perfect the lien, the County may record a

notice in the appropriate office, either in the county for real property, or

with the Secretary of State for personal property.  *Id*.  If perfected, the

priority of this statutory lien relates back to the date the medical services

were provided.  *Id*.

      If an application is approved, the county is obligated to pay the

applicable reimbursement rates to the provider rendering medical

services, up to $10,000 per applicant for any consecutive twelve month

period.  Idaho Code §§ 31-3508, 31-3505B.  If approved, and the county

determines that the applicant is able to pay a portion of the financial

assistance received over a reasonable period of time, then the applicant is

obligated to reimburse the county.  Idaho Code § 31-3510A.  Should an

application be denied, either the applicant or the medical provider can

MEMORANDUM OF DECISION - 7

appeal the decision to the board of county commissioners.  Idaho Code

§ 31-3505D.

Disputes over Idaho's medical indigency statutes are not new in the

bankruptcy forum.  The interplay of the state statutory scheme with the

federal bankruptcy law has given rise to abundant litigation, as the Court

has been called upon to reconcile the recovery rights of providers and lien

rights of counties, on the one hand, with debtors' right to a financial fresh

start on the other.  *See, e.g., Mechling v. Bonner County (In re Mechling),* 02.4

I.B.C.R. 164 (Bankr. D. Idaho 2002); *In re Hegel,* 00.2 I.B.C.R. 101 (Bankr. D.

Idaho 2000); *Sarty v. Board of County Commissioners of Ada County (In re*

*Sarty),* 99.4 I.B.C.R. 162 (Bankr. D. Idaho 1999); *In re Walker,* 97.3 I.B.C.R. 91

(Bankr. D. Idaho 1997); *Handy v. Bonner County (In re Handy),* 97.3 I.B.C.R.

79 (Bankr. D. Idaho 1997).  Although this case shares a few common

threads with the facts presented in connection with prior decisions, the

focus here on the impact of the discharge injunction adds a new wrinkle to

the legal fabric.

MEMORANDUM OF DECISION - 8

II.

In this adversary proceeding, Plaintiff assails the validity and extent of County's statutory lien on Plaintiff's house.  Plaintiff acknowledges that his application for assistance was filed, and that County recorded its resulting notice of lien, prior to the filing of Plaintiff's bankruptcy petition.  However, Plaintiff points out that County did not approve the application for assistance, or make any payments to CRMC, until after the discharge was entered and bankruptcy case was closed.  As a result, Plaintiff contends, at the time the bankruptcy petition was filed, County's lien was valueless, and was therefore void in its entirety.  In the alternative, Plaintiff argues that Idaho Code § 31-3504 is unconstitutional on its face and as applied in this instance.

This Court has previously rejected Plaintiff's first argument.  In *Handy*, prior to the debtor's bankruptcy filing, Bonner County acquired and perfected its real property lien in accordance with Idaho Code § 31-3504.  However, when the debtor's bankruptcy petition was filed, Bonner County had not yet approved the application for medical assistance or

MEMORANDUM OF DECISION - 9

made any payments to his medical providers.  Notwithstanding, this

Court held that the county's lien was valid.  The Court explained that, by

recording the lien notice, Bonner County had given constructive notice to

any subsequent purchaser or hypothetical bona fide purchaser of the

debtor's real property, its lien was not avoidable in bankruptcy, and the

lien was valid to secure payments thereafter advanced for the debtor's

medical care.  *In re Handy*, 97.3 I.B.C.R. at 80.

 The Court reached the same conclusion in *Sarty*.  There, the Court

noted that although the amount of the lien must be quantified during the

benefit determination process, the automatic lien perfected when the notice

was recorded was not invalidated by the bankruptcy filing.  *In re Sarty*, 99.4

I.B.C.R. at 163.

 Plaintiff has not advanced any arguments to persuade the Court to

reconsider its prior analysis of this issue.  Under the reasoning explained in

*Handy* and *Sarty*, the Court concludes that County holds a valid lien on

Plaintiff's real property, which was not limited to the amount that had

been paid out by County on the bankruptcy filing date (*i.e.*, $0).  Instead,

MEMORANDUM OF DECISION - 10

County's lien is enforceable for the full amount paid out under Plaintiff's application as allowed by Idaho law.[3]

### III.

Plaintiff also argues that Idaho Code § 31-3504 is unconstitutional under the United States Constitution because the statute effects a state-sponsored taking of his property (*i.e.*, the equity in his home) without adequate procedural due process.[4]  Plaintiff's argument rests on the fact that Idaho Code § 31-3504 allows a third party applicant to apply for financial assistance on behalf of an indigent patient.  Plaintiff explains that, in such a case, the statutory lien to secure reimbursement to a county automatically arises and attaches to the patient's property without the

---

[3] At oral argument, counsel for County acknowledged that the actual amount of the lien was not formally determined during the administrative benefit determination process.  However, as of the bankruptcy date, all of the medical bills and the applicable Medicaid reimbursement rates were fixed.  Thus, County explained, the amount of the lien could have been determined by a simple mathematical formula.

[4] The Fourteenth Amendment provides, in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. XIV, § 1.

MEMORANDUM OF DECISION - 11

patient's consent.  Thus, Plaintiff reasons, a patient is deprived of a

property interest without an opportunity to be heard.[5]

"The fundamental requirement of due process is the opportunity to

be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v.

Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545,

552 (1965)).  "Due process, unlike some legal rules, is not a technical

conception with a fixed content unrelated to time, place and

circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961).

Rather, "due process is flexible and calls for such procedural protections as

the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481

(1972).

### A.

Plaintiff makes two distinct constitutional arguments.  First, Plaintiff

argues that Idaho Code § 31-3504 is unconstitutional as applied in this

---

[5]  The Supreme Court has indeed held that "temporary or partial
impairments to property rights that attachments, liens, and similar
encumbrances entail are sufficient to merit due process protection." *Connecticut
v. Doehr*, 501 U.S. 1, 12 (1991).

MEMORANDUM OF DECISION - 12

case. Obviously, the Court is not confronted with the situation where a

third party filed an application on behalf of an indigent patient without

first obtaining his consent. Rather, in this case, Plaintiff signed and filed

the application for financial assistance himself. Under these facts, the

combination of the requirements in the Idaho statutes, combined with the

information contained in the application form which Plaintiff completed,

afforded him the requisite due process notice and hearing rights.

Idaho Code § 31-3501 *et seq.* provide notice to all Idaho citizens

concerning the consequences of filing an application for indigent

assistance, including that a lien will arise and attach to all of a patient's

real and personal property. *See* Idaho Code § 31-3504(4). But apart from

the notice, the statutes also provide for an investigation prior to an initial

determination of eligibility for assistance, Idaho Code § 31-3505A, and a

right to appeal and a hearing before the county commissioners concerning

any initial determination, Idaho Code § 31-3505D. In addition, the statutes

provides an applicant or third party a limited right to obtain judicial

MEMORANDUM OF DECISION - 13

review, but only as to "a final determination of the board to deny an

application for financial assistance . . . ."[6]  Idaho Code § 31-3505G.

In addition to the notice and process provided in the statutes, the

application form which Plaintiff signed notified him that, as a consequence

of its execution and filing with the county, a lien may be asserted against

his property for amounts paid out by County, and that he may be

obligated to reimburse County for any assistance received.[7]

_____

[6] Since in this case, Plaintiff's property rights were impaired only because
County approved his application, this statutory right to judicial review would
not protect him.  However, under the former version of Idaho Code § 31-3505,
the Idaho appellate courts have treated decisions concerning indigent medical
assistance in the same fashion as those rendered by a state administrative
agencies, enabling *any* aggrieved party to request that the state district court
review a county's decision in the manner provided by Idaho's Administrative
Procedures Act, Idaho Code § 67-5201 *et seq.  See Intermountain Health Care, Inc. v.
Board of County Comm'rs*, 688 P.2d 260, 263 (Ct. App. 1984), rev'd on other
grounds, 707 P.2d 410 (Idaho 1985); *Univ. of Utah Hosp. v. Minidoka County*, 813
P.2d 902, 906 (Idaho 1991).

[7] Immediately above the applicant signature lines, the application
provided: "I/we understand that the county may place a lien on my/our property
and that I/we will be required to reimburse the county for any expense which
I/we have requested or has been requested on my/our behalf."  Ex. C, Docket No.
22.

MEMORANDUM OF DECISION - 14

Given these facts, the Court concludes that Plaintiff received adequate notice that a lien would automatically attach to his property upon filing the application for financial assistance.[8]  Moreover, the due process requirements embodied in the Idaho statutes guaranteed Plaintiff's right to be heard and to obtain a review of any adverse decision made by County concerning the application.  Thus, the constitutional requirements were satisfied in this case, and thus, Idaho Code § 31-3504 is not unconstitutional as applied to Plaintiff.

---

[8]  Had the application for assistance been filed by CRMC or some other third party, then perhaps Plaintiff's argument would be stronger.  However, as that is not the case here, the Court declines to engage in that analysis.  Even so, the Court observes that while the statute allows a "third party" to execute and file an application for assistance with the county, it requires that the third party sign the application under oath "on the applicant's behalf" and "in the same form and manner" as required for a patient's application.  Idaho Code § 31-3504(1), (2); *see also* Idaho Code § 31-3505(5) (providing that "[a]ny application . . . which fails to meet the provisions of chapter, shall be denied.")  Presumably, to constitute a valid application, a third party would be compelled to demonstrate some lawful basis to act in the patient's stead, for example, under an appointment or by law as a condition to any payment by the county.

MEMORANDUM OF DECISION - 15

B.

Plaintiff next argues that Idaho Code § 31-3504 is unconstitutional on its face because "[t]here is not a set of facts that provides due process to an applicant when a third party applies [for indigent medical assistance] on [the patient's] behalf."  Docket No. 21.

Plaintiff's argument mischaracterizes the standard for a facial challenge to a statute.  For a facial attack to be successful, a challenger must demonstrate that no set of circumstances exist under which the statute would be valid.  *United States v. Salerno*, 481 U.S. 739, 745 (1987). Because a facial attack requires unconstitutionality *under all circumstances*, it necessarily presumes that the litigant would be able to sustain an "as applied" challenge.  *City of Chicago v. Morales*, 527 U.S. 41, 78, n. 1 (1999). Since the Court holds above that Idaho Code § 31-3504 is not unconstitutional as applied to Plaintiff, Plaintiff's facial challenge also fails.

IV.

MEMORANDUM OF DECISION - 16

Plaintiff next argues that by continuing the administrative hearings after Plaintiff received a bankruptcy discharge, both CRMC and County violated the injunction embodied in the discharge, because, in essence, Plaintiff's personal liability to CRMC for the medical expenses was at stake in those proceedings.  County and CRMC disagree with Plaintiff's position.  County explains that the hearing was conducted solely for CRMC's benefit, and that Plaintiff's participation was required simply to provide additional factual information so that County could determine if he was indeed medically indigent at the time the application was filed. County and CRMC both insist that at no time did either entity attempt to impose any personal liability on Plaintiff.

Section 524 of the Code provides:

> (a) A discharge in a case under this title --
> ...
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

MEMORANDUM OF DECISION - 17

11 U.S.C. § 524(a)(2).

In support of his position, Plaintiff cites *Sacred Heart Med. Ctr. v. Hegel (In re Hegel)*, 01.1 I.B.C.R. 19 (D. Idaho 2001).  Admittedly, *Hegel* is not exactly on point as the time line of events differs significantly.  But the decision does provide some valuable insight into resolution of the issues before the Court.

In *Hegel*, the debtor received emergency medical treatment at a hospital.  Less than a month later, he filed a petition for relief under chapter 7.  The following day, without notice of the debtor's bankruptcy filing, the hospital submitted a third party application to Kootenai County seeking indigent financial assistance for the medical services it rendered to the debtor.  The hospital's application was initially denied, and the hospital appealed that decision to the county commissioners.  Prior to the appeal hearing, though, the hospital received notice of the debtor's bankruptcy; it immediately sought relief from the § 362(a) automatic stay prohibiting collection actions against the debtor in order to continue the administrative process.

MEMORANDUM OF DECISION - 18

This Court denied the hospital's request.  The hospital appealed that

decision to the district court, arguing, *inter alia*, that the hospital had an

independent right to seek payment from the county.  Plaintiff contends

that in *Hegel*, the district court held that an action by a hospital to receive

assistance is not an independent third party action because it directly

affects the debtor.

Although the district court did conclude that the hospital did not

have an independent right to collect for the charges, the court's precise

language is critical.  It stated: "where a hospital files a third-party

application with the County, the hospital's actions necessarily affect the

*property* of the debtor."  *In re Hegel*, 01.1 I.B.C.R. at 21 (emphasis added).

Plaintiff's argument attempts to extend this holding to include the *personal*

liability of the debtor.

The distinction between the personal liability of the debtor, and the

liability of debtor's property for a prebankruptcy debt, is important in this

context for at least two reasons.  First, only the automatic stay was at issue

in *Hegel*.  The district court did not discuss the impact of the discharge

MEMORANDUM OF DECISION - 19

injunction on the hospital's actions. Second, the purposes underlying the automatic stay and the discharge injunction are different.[9] Because these two statutory tools are intended to promote distinct policies, they are structured differently and proscribe different actions. In other words, an action that would be a violation of the automatic stay, were it in effect, would not necessarily constitute a violation of the discharge injunction. Because no automatic stay was in effect at the relevant times, only the discharge injunction is at issue in this case.

A discharge in bankruptcy affects only a debtor's personal liability on a debt. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). "Valid, perfected liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt." *In re Handy*, 97.3 I.B.C.R. at

---

[9] The automatic stay was designed, in part, to shield the debtor from the financial pressure of his creditors during the pendency of the bankruptcy proceeding. *Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 551 (9th Cir. 1988) (citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6296-97). On the other hand, "[t]he purpose of the discharge injunction is to 'effectuate one of the primary purposes of the Bankruptcy Code, to afford the debtor a financial fresh start.'" *Garske v. Arcadia Financial, Ltd. (In re Garske)*, 287 B.R. 537, 542 (9th Cir. BAP 2002) (quoting *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 182 (Bankr. E.D. Va. 2000)).

MEMORANDUM OF DECISION - 20

80; *see also, Dewsnup v. Timm*, 502 U.S. 410, 418 (1992).  The discharge

injunction prevents creditors from attempting to collect, recover, or offset

discharged debt as a "personal liability of the debtor." 11 U.S.C.

§ 524(a)(2).  However, some contact between creditors and debtors is

permissible.  "So long as the creditor is not collecting the debt as a

'personal liability of the debtor,' there is no violation under § 524(a)(2)." *In

re Garske*, 287 B.R. at 545.

When, after Plaintiff received a discharge, the administrative

proceedings resumed, the objective was not to determine whether Plaintiff

was personally liable to CRMC for the medical debt; rather, the

proceedings were necessary to determine whether County was liable to

CRMC for the debt.  CRMC apparently believed that Plaintiff's

participation in the hearing was required in order to present the

appropriate facts regarding Plaintiff's financial situation so that the county

commissioners could make a proper determination as to County's

obligation to pay CRMC.  If the board determined that Plaintiff was

indeed medically indigent at the time the emergency medical services

MEMORANDUM OF DECISION - 21

were rendered, it had no discretion to deny the application.  *In re Walker*, 97.3 I.B.C.R. 91, 92 (Bankr. D. Idaho 1997); Idaho Code § 31-3505B.  If the facts revealed that Plaintiff was medically indigent, County would be required by Idaho statute to pay CRMC.

According to the transcript, during the administrative hearing CRMC made it clear that it was not attempting to impose personal liability for the medical debt on Plaintiff.  CRMC's counsel stated:  "Obviously, [Plaintiff] has no obligation to the hospital because it was taken out in bankruptcy. . . .  It's [CRMC's] position, and I think Alan's [referring to Mr. Goodman, a County attorney] always agreed with us . . . that if an application is made to the County, and if it was made to the County before the bankruptcy that the County's responsible."  Transcript of Hearing, April 15, 2005, 3:9-11, Docket No. 22.  At the hearing, County also acknowledged that Plaintiff was not personally liable for the medical debt, but maintained that its lien remained valid.  County commissioner Marvin Bingham stated:  "We can't charge him but we got a lien against him."  Transcript of Hearing, April 15, 2005, 17:20, Docket No. 22.  This position is

MEMORANDUM OF DECISION - 22

further evidenced in the written "Order Waiving Reimbursement," dated

April 18, 2005, entered in the administrative proceeding by County which

provides:

> since these medical bills were discharged through [Plaintiff's]
> bankruptcy petition, the [Plaintiff] is not required to make
> reimbursement payments to Minidoka County for the medical
> charges on his behalf.
>
> IT IS THEREFORE ORDERED THAT Minidoka County does
> hereby waive reimbursement by the [Plaintiff].  However,
> Minidoka County has secured this debt with a lien against the
> [Plaintiff's] real property.

Ex. H, Docket No. 24.

Because neither County nor CRMC were attempting to collect the

medical debt as a personal liability of Plaintiff, they did not violate

§ 524(a)(2) by resuming the administrative hearings after Plaintiff received

his discharge.

## Conclusion

MEMORANDUM OF DECISION - 23

For the reasons stated above, based upon this record, it appears County retains a valid lien on Plaintiff's real property.  In addition, the Court declines to hold that Idaho Code § 31-3504 is unconstitutional on its face or as applied in this case.  Finally, it appears that neither County nor CRMC violated § 524(a)(2) by continuing the administrative hearings after Plaintiff received his discharge.

Plaintiff's motion for summary judgment, Docket No. 20, will be denied by separate order.  Defendants have not sought summary judgment.  However, based upon the Court's review of the record, it would appear that no genuine issue of material fact remains for trial, and that Defendants may be entitled to summary judgment.  Ordinarily, a court cannot grant summary judgment *sua sponte* "without giving the losing party ten days' notice and an opportunity to present new evidence, '[however, a court] may grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion.'"  *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1439 (9th Cir. 1995) (quoting *United States v. Grayson*, 879 F.2d

MEMORANDUM OF DECISION - 24

620, 625 (9th Cir. 1989)).  To ensure that Plaintiff has been fully heard on

the issues, the Court's order shall afford Plaintiff an opportunity to show

cause why summary judgment in favor of Defendants dismissing this

action should not be entered.

Dated:  March 20, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 25